UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRADLEY GORDON,

    Plaintiff,

v.

APM TERMINALS NORTH AMERICA, INC.,

    Defendant.

Case No. 17-cv-03970-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 9

## INTRODUCTION

Defendant APM Terminals North America, Inc. ("APMTNA") has filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(5). Plaintiff filed an Opposition (Dkt. No. 13) and APMTNA filed a Reply (Dkt. No. 19). The Court finds this matter suitable for disposition without oral argument and **VACATES** the September 7, 2017 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** APMTNA's Motion for the following reasons.

## BACKGROUND

The following allegations are taken from Plaintiff's Complaint. *See* Notice of Removal, Ex. A (Compl.), Dkt. No. 1. APMTNA and Plaintiff entered into a contract by which APMTNA agreed to employ Plaintiff to work at its place of business in Singapore for a period of no less than five years, unless he sought a job within the Maersk Group after three years of employment with APMTNA.[1] *Id.* at 3, 5-6; *see* Pedersen Decl., Ex. A (Agreement), Dkt. No. 9-2.[2] Plaintiff was

---

[1] The Complaint does not clearly explain the relationship between APMTNA and Maersk.

[2] This document is not attached to the Complaint; however, a court ruling on a Rule 12(b)(2) or (5) motion may consider evidence outside the pleadings. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922

United States District Court
Northern District of California

required to move from San Francisco, California to Singapore. *Id.* at 3. APMTNA promised Plaintiff that his position would include a portfolio management role on APMTNA's management team; this would offer Plaintiff investment opportunities through APMTNA's affiliation with Maersk. *Id.* at 5-6. APMTNA also promised to fully promote and develop its business activities in Singapore and to create investment opportunities for Plaintiff, which would allow Plaintiff to secure additional income beyond that set forth in his employment contract. *Id.* In addition, Plaintiff would be employed for a time period that would last until at least one of his minor children graduated from high school in Singapore. *Id.* Plaintiff accepted the offer of employment, quit his secure senior position at Deutsche Bank in San Francisco, and moved to Singapore with his family. *Id.* at 3, 6.

On or about February 22, 2016, APMTNA terminated Plaintiff's employment without cause and with three years remaining on the contract. *Id.* Plaintiff alleges APMTNA knew it would cease doing business in Singapore prior to the expiration of the promised five-year term of employment. *Id.* APMTNA knew there would be no business development in Singapore in which Plaintiff could invest, and knew it would not require Plaintiff's employment for the period stated in his employment agreement. *Id.*

On February 21, 2017, Plaintiff filed this action in San Francisco Superior Court. *See* Compl. Plaintiff asserts causes of action for (1) breach of contract, (2) common counts, (3) breach of the covenant of good faith and fair dealing, (4) fraud, and (5) violation of California Labor Code section 970. *See id.* at 2-6. On July 14, 2017, APMTNA removed the action to this Court. *See* Notice of Removal. APMTNA now moves to dismiss the Complaint for lack of personal jurisdiction and for insufficient service of process. *See* Mot. Alternatively, APMTNA requests the Court quash the attempted service. *See id.* at 2 n.1.

---

(9th Cir. 2001).

2

# DISCUSSION[3]

The Court first considers whether it may exercise personal jurisdiction over APMTNA before determining whether service was sufficient.

## A. Rule 12(b)(2)

### 1. Legal Standard

Rule 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). However, this demonstration requires that the plaintiff "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). To make this showing, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [plaintiff's] favor." *Love*, 611 F.3d at 608; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (in considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff). Otherwise, a defendant could prevent a plaintiff from meeting his burden simply by contradicting the plaintiff's affidavits. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

Courts properly exercise personal jurisdiction over a defendant "if it is permitted by a long-arm statute and if the exercise of jurisdiction does not violate federal due process." *Pebble Beach Co.*, 453 F.3d at 1154. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 753 (2014). Because "California's long-arm statute allows the exercise of personal jurisdiction to

---

[3] APMTNA requests the Court take judicial notice of Plaintiff's Complaint. Mot. at 23. Because APMTNA filed the Complaint with its Notice of Removal, it is already part of the record. The Court accordingly DENIES APMTNA's request. *See Evanston Ins. Co. v. Uber Techs., Inc.*, 2015 WL 8597239, at *3 (N.D. Cal. Dec. 14, 2015) (denying request for judicial notice of complaint and counterclaims which were already part of the record).

3

the full extent permissible under the U.S. Constitution," a court's inquiry centers on whether exercising jurisdiction comports with due process. *Id.*; *see* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Due process requires that nonresident defendants have "minimum contact" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted); *see Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").

A court may exercise either general or specific jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts with the forum. *Id.* at 415. If general jurisdiction exists, the forum has jurisdiction over the defendant regardless of where the events giving rise to the litigation occurred. *Id.*

If a defendant's contacts with the forum are not sufficient to establish general jurisdiction, specific jurisdiction may still be shown. The Court may assert specific jurisdiction over a nonresident defendant if three requirements are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted). The plaintiff bears the burden of demonstrating the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If the plaintiff satisfies the first two parts of the test, the burden shifts to the defendant to "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462,

4

1    476-78 (1985)). While all three requirements must be met, in considering the first two prongs,

2    "[a] strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc. v. La*

3    *Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc).

   2.  Analysis

APMTNA argues it is not subject to either general or specific jurisdiction in California. *See* Mot. at 7-19. Kathy Deemer, APMTNA's Chief Financial Officer and Treasurer, declares APMTNA is a Delaware corporation with its headquarters and principal place of business in Charlotte, North Carolina and a satellite corporate office in Elizabeth, New Jersey. Deemer Decl. ¶ 4, Dkt. No. 9-1. She further avers (1) "APMTNA has not conducted and presently does not conduct any general business operations in the State of California and/or Singapore"; (2) "has not had and does not have any offices, facilities, telephone listings, or mailing addresses in California and/or Singapore, and has not engaged in any direct advertising or sale of products to residents of California and/or Singapore"; and (3) "has not employed and does not employ any officers or agents who transact business in California and/or Singapore on its behalf and has not conducted any corporate meeting so conferences in California and/or Singapore." *Id.* ¶ 5.

Plaintiff does not dispute that APMTNA is a Delaware corporation and that it has its "principal office" in Charlotte, North Carolina. *See* Gordon Decl. ¶ 15 ("I am aware that APM Terminal North America, Inc., a Delaware corporation. . . ."); Opp'n at 6-7 (arguing APM Terminals Pacific, LLC shares its principal office with APMTNA in Charlotte, North Carolina). Plaintiff instead argues APMTNA is subject to jurisdiction in California through an alter ego relationship with nonparty Maersk, APMTNA's alleged parent corporation.

As an initial matter, Plaintiff presents different versions of events in his Opposition than those he alleges in the Complaint. Plaintiff's Complaint alleges he entered into a contract and was employed by APMTNA. *See* Compl. at 3 ("Defendant hired and employed [P]laintiff to work in its place of business in Singapore for a period of five years."); *id.* at 6 ("Plaintiff accepted [D]efendant's offer of employment. . . ."); *see also id.* at 1 (naming APMTNA as sole defendant). In his Opposition, Plaintiff states he "is a former employee of A.P. Moller-Maersk A/S", a nonparty. Opp'n at 1; *see id.* at 2 ("Maersk violated California Labor Code 970 by its fraudulent

5

misrepresentation in inducing Plaintiff leave his secure employment in the State of California and take up the new role with Maersk."); *id.* at 3 (asserting in a heading that "Plaintiff's employer was the Maersk Group" (capitalization omitted)); *id.* (Plaintiff "recognized that if he were to take the role, he would be joining Maersk" and "[u]ltimately, Plaintiff received and accepted the offer from Maersk to take up the Asia Pacific role."); *id.* at 4 ("Plaintiff believed himself to be working for, and actually did work for, the [Maersk] Group. . . ."). Plaintiff reiterates this new version in his Declaration. *See* Gordon Decl. ¶ 2, Dkt. No. 15 ("From June 3, 2013 until June 15, 2015, I was actively employed by a unit of the A.P. Moller-Maersk Group . . . as Head of Business Development and Portfolio Management, Asia Pacific Region, APM Terminals. Following a notice period, I ceased to be an employee of the [Maersk] Group as of November 30, 2015."); *id.* ¶ 3 ("Prior to my period of employment with the [Maersk] Group. . . ."); *id.* ¶ 5 ("Before I was hired by the [Maersk] Group. . . ."). This discrepancy is immaterial, as both Plaintiff's Complaint and his Opposition are squarely contradicted by the Employment Agreement itself, which shows nonparty APM Terminals Management (Singapore) Pte. Limited ("APM Singapore") offered Plaintiff a position. *See* Agreement. The Agreement does not mention APMTNA and is not executed by APMTNA.

The Complaint describes Maersk as an affiliate of APMTNA and discusses Maersk only in relation to APMTNA's alleged promises to Plaintiff. *See* Compl. at 5 ("Defendant represented that [P]laintiff would . . . have investment opportunities through [D]efendant's affiliation with the Maersk Group."); *id.* at 6 ("[D]efendant promised that [P]laintiff['s] work activities would include a portfolio management role on [D]efendant's management team and that as a result [P]laintiff would have investment opportunities through [D]efendant's affiliation with the Maersk Group[.]"). There are no allegations that Maersk employed Plaintiff, and Plaintiff does not connect Maersk's conduct to his claims. *See* Compl. The Complaint also does not contain facts describing how Maersk is affiliated with APMTNA.

Only in his Opposition does Plaintiff argue "Maersk operates as a single enterprise with

different operating units. APM Terminals is one such operating unit."[4] Opp'n at 5. Plaintiff further asserts "it is apparent that each Maersk entity is an alter ego of the Group, and that the Group operates as a single enterprise." *Id.* The Court disagrees. The Complaint contains no allegations of alter ego theory or facts that explain the relationship between Maersk and APMTNA. At best, Plaintiff alleges APMTNA has an "affiliation" with Maersk, but he provides no details as to how exactly the two entities are affiliated. He fails to plead that Maersk and APMTNA are alter egos or have a parent-subsidiary relationship, let alone plead facts demonstrating as much. *See Curci Invs., LLC v. Baldwin*, __ Cal. Rptr. 3d __, 2017 WL 3431457, at *3 (Cal. Ct. App. Aug. 10, 2017) ("Before the alter ego doctrine will be invoked in California, two conditions generally must be met. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." (internal quotation marks omitted)).

Plaintiff fails to establish the Court may exercise either general or personal jurisdiction over APMTNA. Plaintiff fails to make a prima facie showing that APMTNA has sufficient contacts with California to subject it to jurisdiction here. Moreover, the majority of Plaintiff's Opposition focuses on nonparty Maersk's contacts with California, not APMTNA's. *See* Opp'n at 6 (arguing in a heading that "*Maersk* is subject to the specific jurisdiction of the courts in and for the State of California." (capitalization omitted; emphasis added)). He asserts that

> at least twelve [Maersk] Group entities are registered to do business in the State of California, including defendant APMTNA. One of those entities, APM Terminals Pacific, LLC, operates a container terminal in the Port of Los Angeles in Los Angeles County, California. [] The single member and/or manager of APM Terminals Pacific, LLC is none other than APMTNA, according to the most recent Statement of Information about APM Terminals Pacific, LLC filed with the Secretary of State of the State of California. Its principal office, according to the Statement of Information, is 9300 Arrowpoint Boulevard, Charlotte, North Carolina – a principal office it shares with APMTNA.

---

[4] It is unclear whether "APM Terminals" refers to APMTNA; APM Singapore; or APM Terminals Pacific. *See* Opp'n (referencing all three).

7

*Id.* at 6-7 (footnotes omitted).[5]  Plaintiff appears to offer two arguments based on these contentions.  First, Plaintiff contends general and specific personal jurisdiction exists over Maersk. *See* Opp'n at 7 ("With not less than twelve Maersk entities registered to do business in the State of California, and with a Maersk entity operating the largest single proprietary terminal in the world, it is beyond cavil that Maersk purposefully avails itself of business opportunities in the State of California – so much so that a court could find that general jurisdiction over Maersk lies in California, although such a broad finding is not required in this action.  Specific jurisdiction over the subject matter is sufficient, and it is clear from the facts that Maersk engaged in contacts with the State of California in its recruitment of a California citizen for a position with the Group.").  He contends this in turn imputes jurisdiction over APMTNA: because "Maersk operates as a single enterprise" which is subject to personal jurisdiction in California, "Plaintiff determined that APMTNA was the most appropriate Maersk entity against whom to file his complaint." *Id.* at 8; *see id.* at 9.  Second, Plaintiff argues that "as the sole member and/or manager of APM Terminals Pacific, LLC, . . . it strains credibility to believe that APMTNA should not be liable to at minimum the specific jurisdiction of a California court." *Id.* at 9.  Neither argument supports a finding of personal jurisdiction over APMTNA.

        a.    *General Jurisdiction*

"The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.'" *CollegeSource*, 653 F.3d at 1074 (quoting *Schwarzenegger*, 374 F.3d at 801).  General jurisdiction over a subsidiary may exist "upon a showing that the subsidiary is an alter ego of its parent[.]" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1065 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 915 (2016).  But "the parent-subsidiary

---

[5] Plaintiff lays no foundation for his assertion that APMTNA is registered to do business in California.  He instead cites the California Secretary of State's business search website homepage. *See* Opp'n at 6 n.1 (citing California Secretary of State, *Business Search*, https://businesssearch.sos.ca.gov/).  The page cited by Plaintiff does not show APMTNA is registered to do business in California.  Plaintiff does not indicate what search terms he used and does not provide a copy of the website that ostensibly shows APMTNA is registered to do business in California.

8

relationship does not on its own establish two entities as 'alter egos,' and thus does not indicate that general jurisdiction over one gives rise to general jurisdiction over the other." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citing *Ranza*, 793 F.3d at 1070). This is because "corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary"; "[h]owever, in certain limited circumstances, the veil separating affiliated entities may be pierced to impute liability from one entity to the other." *Ranza*, 793 F.3d at 1070-71.

"[A] subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego." *Daimler*, 134 S. Ct. at 759; *see Ranza*, 793 F.3d at 1071 (noting "the [Supreme] Court left intact this circuit's alter ego test for 'imputed' general jurisdiction" (citing *Daimler*, 134 S. Ct. at 759)). "To satisfy this test, 'a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice.'" *Williams*, 851 F.3d at 1021 (quoting *Ranza*, 793 F.3d at 1073). "[T]he alter ego test may be used to extend personal jurisdiction to a foreign parent *or* subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza*, 793 F.3d at 1073 (emphasis in original).

Assuming, arguendo, Maersk has sufficient continuous and systematic contacts with California to give rise to personal jurisdiction over it, Plaintiff fails to allege any facts showing that APMTNA and Maersk are alter egos. Plaintiff contends APMTNA and Maersk have a parent-subsidiary relationship, but neither his Complaint nor his Opposition contains facts showing a unity of interest and ownership such that the Court should disregard APMTNA's and Maersk's separate personalities. Plaintiff therefore fails to allege APMTNA and Maersk are alter egos. *See Williams*, 851 F.3d at 1021-22 (affirming finding that it lacked of general jurisdiction where "[a]ppellants fail[ed] . . . to plead facts sufficient to make out a prima facie case that [parent corporation and its subsidiary were] 'alter egos.' Appellants' complaint ma[de] almost no factual allegations regarding the nature of the parent-subsidiary relationship, and the evidence Appellants submitted in opposition to [the parent company]'s motion to dismiss did not provide any

United States District Court<br>Northern District of California

9

additional clarity."). As such, Plaintiff fails to show general jurisdiction exists over APMTNA based on an alter ego relationship with Maersk.

b. *Specific Jurisdiction*

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121 (internal quotation marks omitted). This "relationship must arise out of contacts that the *defendant himself* creates with the forum State." *Id.* at 1122 (emphasis in original; internal quotation marks omitted). In other words, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* "[T]he plaintiff's contacts with the forum . . . cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* (internal quotation marks omitted).

Plaintiff argues specific jurisdiction exists over APMTNA because he signed his employment contract in San Francisco. *See* Opp'n at 3, 7 ("Plaintiff signed the employment offer letter and the employment agreement in California."); Gordon Decl. ¶ 6 ("I counter-signed the offer of employment and the employment agreement while in San Francisco, California."). He cannot prevail on this argument. The Agreement is between Plaintiff and APM Singapore, not APMTNA. *See* Agreement ¶ 1 (defining APM Singapore as the "Employer"); *id.* at 8 (bearing the signatures of Plaintiff and APM Singapore's General Manager). Plaintiff does not dispute the authenticity of this document, and he offers no facts showing APMTNA was a party to the Agreement. *See* Opp'n. Plaintiff also fails to offer facts explaining how APM Singapore and APMTNA are related, let alone facts showing the two entities are alter egos. *See id.*; Compl.

APMTNA, however, offers evidence that APMTNA and APM Singapore are independent entities with no such relationship. Henrick Pedersen, Chief Commercial Officer at APM Terminals BV, declares that "APMT Singapore has been and is a wholly-owned subsidiary of APM Terminals BV." Pedersen Decl. ¶ 4. Pedersen also declares "APMT Singapore did not and does not have any involvement with the operational and/or administrative functions of the APM Terminals organization in North America, including [APMTNA], nor did or does AP[M]TNA

10

have any involvement in such functions of APMT Singapore." *Id.* ¶ 5. Plaintiff does not address, much less contradict, these assertions. *See* Opp'n. Because Plaintiff's allegation that APMTNA signed the Agreement is not plausible in light of the Agreement itself, nothing in the record supports a finding that the alleged act of signing the Agreement in San Francisco[6] gives rise to personal jurisdiction over APMTNA.[7]

Because Plaintiff fails to establish APMTNA was a party to the Agreement or is an alter ego of APM Singapore, the Court need not address Plaintiff's argument that APMTNA's management of APM Terminals Pacific gives rise to specific jurisdiction.[8] *See* Opp'n at 6, 8.

---

[6] While Plaintiff declares he "counter-signed . . . the employment agreement in San Francisco, California" (Gordon Decl. ¶ 6), the Agreement states "[t]his agreement is executed in duplicate and signed on 25th April 2013 in Singapore" (Agreement at 8). Plaintiff does not address this discrepancy. *See* Opp'n.

[7] Plaintiff also appears to suggest APMTNA is subject to personal jurisdiction in California because there are no other Maersk entities that are amenable to suit in this state. *See* Opp'n at 9 ("APMTNA appears to be the 'general manager' for Maersk's container terminal enterprises in the United States and thus is an appropriate entity to sue when the real defendant in interest, here, the container terminal division of A.P. Moeller-Maersk A/S, could perhaps more readily resist being haled into court in California." (footnote omitted)). Plaintiff's contention that he can substitute one defendant for another simply based on which entity can "more readily resist being haled into court in California" offends the most basic notions of due process, particularly in light of Plaintiff's concession that APMTNA did not employ Plaintiff or sign the Agreement. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) ("Personal jurisdiction . . . restricts judicial power not as a matter of sovereignty, but as a matter of individual liberty, for due process protects the individual's right to be subject only to lawful power." (internal quotation marks omitted)); *International Shoe*, 326 U.S. at 316 ("[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (internal quotation marks omitted)).

[8] To the extent Plaintiff argues personal jurisdiction arises out of APMTNA's conduct in other states, this is irrelevant and does not establish that APMTNA is subject to personal jurisdiction in California. *See* Opp'n at 8 ("APMTNA also is the 'governor' of APM Terminals Tacoma, LLC, which operates a container terminal in the State of Washington. As it is registered in the State of Alabama, APMTNA appears to be the sole manager or member of APM Terminals Mobile, LLC, which operates a container terminal in the State of Alabama. As it is registered to do business in the State of New Jersey, APMTNA appears to be the sole manager or member of APM Terminals Elizabeth, LLC, which operates a container terminal in the State of New Jersey." (footnotes omitted)). That APMTNA does business in other states, even if true, does not show APMTNA has the requisite minimum contacts with California. *See Walden*, 134 S. Ct. at 1122 (The "'minimum contacts' analysis looks to the defendant's contacts *with the forum State itself*[.]" (emphasis added)).

### 3. Conclusion

Based on the foregoing analysis, the Court finds it lacks personal jurisdiction over APMTNA and **GRANTS** the Motion to Dismiss pursuant to Rule 12(b)(2). As explained above, Plaintiff fails to offer any facts to make a prima facie showing that APMTNA is an alter ego of either Maersk or APM Singapore. Plaintiff does not request an opportunity to conduct jurisdictional discovery, and nothing in the record indicates Plaintiff might be able to allege or prove additional facts establishing personal jurisdiction over APMTNA that he was unable to allege in the Complaint or identify in his Opposition. Moreover, based on Plaintiff's Opposition and Declaration, it is evident that APMTNA was not involved in Plaintiff's employment; rather his dispute is with APM Singapore or Maersk, not APMTNA. Accordingly, the dismissal shall be **WITHOUT LEAVE TO AMEND**. *See, e.g.*, *Elofson v. McCollum*, 2017 WL 2877099, at *6 (N.D. Cal. July 6, 2017) (dismissing case without leave to amend where plaintiff "ha[d] not satisfied his burden to present evidence sufficient to . . . make a prima facie showing of personal jurisdiction."); *Lefkowtiz v. Scytl USA*, 2016 WL 537952, at *5 (N.D. Cal. Feb. 11, 2016) (dismissing action for lack of personal jurisdiction without leave to amend where plaintiff failed to show the court could exercise general or specific jurisdiction over defendants based on their conduct in California or based on successor liability); *Pelican Commc'ns, Inc. v. Schneider*, 2015 WL 527472, at *3 (N.D. Cal. Feb. 6, 2015) (granting Rule 12(b)(2) motion without leave to amend where plaintiff failed to make a prima facie showing of personal jurisdiction and gave no indication it could do so).

**B.  Rule 12(b)(5)**

Because the Court dismisses Plaintiff's Complaint with prejudice for lack of personal jurisdiction, it need not consider APMTNA's arguments regarding insufficient service of process.

**CONCLUSION**

Based on the foregoing analysis, the Court lacks personal jurisdiction over APMTNA. Accordingly, the Court **GRANTS** APMTNA's Motion to Dismiss pursuant to Rule 12(b)(2) **WITHOUT LEAVE TO AMEND**. Because APMTNA is the sole defendant, the case is **DISMISSED**, and the Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: September 1, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge